## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MELISSA V.,[1]**

      **Plaintiff,**

                                  **Case No. 2:23-cv-0006**

     **v.**                            **Magistrate Judge Norah McCann King**

**LELAND DUDEK,[2]**
**Acting Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Melissa V. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on April 30, 2018, and July 22, 2019, respectively, alleging that she has been disabled since January 8, 2018. R. 16, 84, 100, 245–51. The applications were denied initially and upon reconsideration. R. 120–25, 128–30. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 132–33. ALJ Peter Lee held a hearing on May 12, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 53–83. On December 9, 2020, the ALJ held a supplemental hearing at which Plaintiff's counsel confirmed that no additional testimony from Plaintiff was needed. R. 49–52. The ALJ held a second supplemental hearing on May 3, 2021, at which Plaintiff, who was again represented by counsel, participated, and a vocational expert testified regarding questions related to his answers to written interrogatories. R. 38–48. In a decision dated September 21, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 8, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–28. That decision became final when the Appeals Council declined review on November 14, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 4, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On that same day, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at \*4. A court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

> **B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or

combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. R. 19. She was 31 years old on January 8, 2018, her alleged disability onset date. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 19.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy, status-post right calcaneal fracture, status-post right knee meniscus tear, and right ankle synovitis. *Id*. The ALJ also found that Plaintiff's history of juvenile epilepsy and adjustment disorder with anxious and depressed mood were not severe impairments. R. 19–20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

7

impairments that met or medically equaled the severity of any Listing. R. 20–21.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 21–28. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an accounting clerk. R. 26 – 27.

In the alternative, at step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*, jobs as a document preparer, an order clerk, and an assembler—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 27–28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 8, 2018, her alleged disability onset date, through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 12. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On July 9, 2018, Andrew Smith, D.C., Plaintiff's treating chiropractor, completed a three-page, check-the-box, and fill-in-the-blank form entitled, "General Medical Report." R. 809–11 ("July 2018 opinion"). Dr. Smith first examined Plaintiff on April 25, 2018, and had treated her three times per week, most recently on July 9, 2018. R. 809. Dr. Smith recounted Plaintiff's history as follows:

> MVA [motor vehicle accident] on 1/8/18 resulting in neck, midback & low back pain, fracture to sacrum, fracture to [right] foot/ankle, upper & lower extremity pain, numbness that is debilitating & disabling in nature due to severity, frequency and exacerbation through routine activities of daily living including sitting, standing, walking. Pt has attempted allopathic & physical therapy & acupuncture without significant relief.

*Id*. Asked for his physical findings, Dr. Smith responded as follows:

> Ortho/Neuro including Max Cerv Comp [maximal cervical compression test],[4] <u>Soto Hall</u>,[5] Shoulder Depressor Tests, Minor's Sign,[6] Kemps Test,[7] increased pain with Heel Walk, Toe Walk, as of 7/9/18. Decreased & painful cervical & thoracic ROM [range of motion] as of 7/9/18. See attached.

*Id*. (emphasis in original). Asked to identify pertinent studies, Dr. Smith responded: "X-ray & MRI includes <u>reversal</u> of cervical lordosis & [positive] lumbar disc bulging consistent with severe symptomatic presentation." *Id*. (emphasis in original). Dr. Smith described Plaintiff's treatment as "[g]entle chiropractic spinal adjustment/CMT, STM, therapeutic taping resulting in slow, incremental but steady improvement [illegible]." *Id*. Dr. Smith went on to opine that, based on his findings, Plaintiff could lift a total of 5 pounds but "no carrying with walking at this time" because "(1) Avoid exacerbation[; and] (2) Avoid falls"; stand and/or walk less than 2 hours per day; sit less than 6 hours a day with "sitting limited to 45, then needs to move"; limited ability to

---

[4] "Spurling's test (also known as maximal cervical compression test and foraminal compression test) is used to diagnose cervical nerve root compression causing cervical radiculopathy." *Tammy S. v. Comm'r of Soc. Sec.*, No. 1:21-CV-446, 2022 WL 3134040, at *11 n.11 (S.D. Ohio Aug. 4, 2022) (citations omitted).

[5] One court described the Soto Hall test as follows: "With the patient lying on his/her back, the spine is flexed (bent) beginning at the neck and going downward. Pain will increase when the affected area of the spine is flexed." *Dollard v. Astrue*, No. 07-00392CVWRELSSA, 2008 WL 2186441, at *1 n.5 (W.D. Mo. May 23, 2008) (internal quotation marks omitted).

[6] "A positive Minor's sign is present when a patient, rising from a sitting to a standing position, uses the arms and unaffected lower extremity to support body weight or uses hands to 'walk up' the legs." *Boyd v. Colvin*, No. 6:15-CV-06667 (MAT), 2016 WL 7155241, at *1 n.1 (W.D.N.Y. Dec. 8, 2016).

[7] "The Kemp test assesses the lumbar-spine facet joints to detect pain." *Tiffany D. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0994 (JJM), 2021 WL 363790, at *1 n.5 (W.D.N.Y. Feb. 3, 2021) (internal quotation marks and citations omitted).

push and/or pull with "no twisting of the thorax";  and limited ability to travel "due to limits on sitting & walking distances." R. 810 (emphasis in original). Dr. Smith further indicated that there were other conditions that limited Plaintiff's ability to perform work-related activities as Plaintiff was "recovering from fracture in sacrum & [right] ankle[;] see reports from neurologist, pediatrist, orthopedic physicians & physical therapist & acupuncturist." *Id.*

Referenced in and attached to this July 2018 opinion were three documents dated July 9, 2018: a three-page, check-the-box, and fill-in-the-blank form entitled, "Passive Range of Motion Chart[,]" R. 814–16; a one-page "Re-Evaluation[,]" R. 818; and a one-page "Evaluation[,]" R. 819. In the Passive Range of Motion Chart, Dr. Smith indicated, *inter alia*, that Plaintiff's lateral flexion of the cervical spine on the right and left was 40+, flexion on the right was 20+, extension on the right was 45+, rotation to the right was 60+ and rotation to the left was 70+. R. 815 (noting further to "see exam"). Plaintiff's flexion of the lumbar spine was 70+ and extension was 15+ and lateral flexion on the right was 10+ and on the left was 15+. *Id.* Plaintiff could walk on her heels and her toes, but with increased pain. *Id.* In the Re-Evaluation, Dr. Smith reported Plaintiff's subjective observations and complaints. R. 818. He reported his physical examination findings in the document entitled "Examination[,]" including, *inter alia*, results of the maximum cervical compression test, Soto Hall, shoulder depression, Minor's Sign, Kemps, and ability to heel walk and toe walk with increased pain. R. 819. Dr. Smith also reported in greater detail Plaintiff's ranges of motion in her cervical and lumbar spines. *Id.*

On January 8, 2020, Dr. Smith completed a seven-page, check-the-box, and fill-in-the-blank form entitled "Arthritis and Back Pain Residual Functional Capacity Questionnaire." R. 3232–3238, Exhibit 53F/52–58 ("January 2020 opinion"); *see also* R. 427–33, Exhibit 18E/2–8 (duplicate). Dr. Smith again noted that Plaintiff had been in a motor vehicle accident on January

8, 2018, and that he had first treated her on April 25, 2018. R. 3232. He diagnosed cervical root disorders, not elsewhere classified (G54.2); thoracic root disorders, not elsewhere classified (G54.3); lumbosacral root disorders, not elsewhere classified (G54.4); cluster headache syndrome, unspecified, not intractable (G44.009); pain in the right knee (M25.561); pain in the right ankle and joints of the right foot (M25.571); pain in the right foot (M79.671); and unspecified fracture of the sacrum, initial encounter for a closed fracture (S32.10XA). *Id*. Plaintiff's prognosis was guarded to poor "based on apparent failed back surgery and prospect of second lower back surgery and possible need for cervical spine surgery and poor symptomatic response to physical therapy." *Id*. Plaintiff's symptoms were identified as pain in the neck, dorsal, lower back, right knee, right ankle, right foot, right shoulder/upper extremity, right lower extremity, and left thumb as well as headaches. *Id*. Plaintiff reported "variable but constant & severe pain—all worse with activity including ADLs [activities of daily living] of driving car, self-care, climbing stairs, walking, sitting, carrying, twisting, reaching, bending." *Id*. Dr. Smith identified the following positive objective signs: reduced range of motion (joints "C, T, L, SIs"); joint instability; sensory changes; reflex changes; impaired sleep; abnormal posture; tenderness; swelling; muscle spasm; muscle weakness; abnormal gait; and positive straight leg raising test. R. 3233 (citing "see enclosed exam"). Dr. Smith denied that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. *Id*. According to Dr. Smith, Plaintiff's experience of pain was severe enough to frequently interfere with her attention and concentration. *Id*. Dr. Smith also noted that the "constant pain & [illegible] are very upsetting to the patient but the pain & [illegible] appear very real & musculoskeletal in origin." *Id*. According to Dr. Smith, Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation. R. 3234. Dr. Smith opined that Plaintiff could

tolerate moderate stress, explaining that "[e]motional stress is <u>not</u> the problem as pain appears to be musculoskeletal in origin." *Id*. (emphasis in the original). According to Dr. Smith, Plaintiff's impairments had lasted or were expected to last at least twelve months. *Id*. Dr. Smith went on to opine that Plaintiff could walk less than one city block without rest or severe pain; could sit for 15 minutes or "[p]ossibly less" before needing to get up to change position or posture "due to pain"; stand for 5 minutes at one time before needing to sit down or walk around; sit for a total of less than 3 hours in an 8-hour working day; and stand/walk for a total of less than 3 hours in an 8-hour working day. R. 3234–35. Plaintiff needed periods of walking around during an 8-hour work day: specifically, she must walk for 5 minutes every 15 minutes. R. 3235. He further opined that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking and that she sometimes would need to take unscheduled breaks. *Id*. Dr. Smith opined that Plaintiff would need breaks at least 4 times per hour and that such breaks should last "[a]t least 5 minutes but hard to estimate based on severity & variety of pain." R. 3235–36. Dr. Smith denied that Plaintiff's legs must be elevated with prolonged sitting or that Plaintiff required a cane or other assistive device with occasional standing/walking. R. 3236. Dr. Smith went on to opine that Plaintiff could frequently (meaning 34% to 66% of an 8-hour working day) lift and carry less than 10 pounds; rarely (meaning 1% to 5% of an 8-hour working day) twist, stoop (bend), and climb stairs and could never crouch or climb ladders. *Id*. Dr. Smith further opined that Plaintiff had significant limitations in performing repetitive reaching, handling, or fingering; specifically, Plaintiff could use her hands for less than 33% of an 8-hour work day to grasp, turn, or twist objects; could use her fingers for less than 66% of an 8-hour work day for fine manipulations; and could use her arms less than 33% of an 8-hour work day for reaching (including overhead). R. 3236–37. Plaintiff's impairments were likely to produce "good days"

12

and "bad days" and she would likely be absent from work as a result of her impairments or treatment, on average, four days per month. R. 3237.

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Smith's opinions which, she argues, support a finding of disability. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 26–29; *Plaintiff's Reply Brief*, ECF No. 12, pp. 7–11. For the reasons that follow, the Court agrees that this issue requires remand.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[8] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20

---

[8] As previously noted, Plaintiff's claims were filed on April 30, 2018 and July 22, 2019.

C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*,

that the Commissioner will no longer "defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from [the claimant's] medical sources"). Instead, the Commissioner will consider

the following factors when considering all medical opinions: (1) supportability; (2) consistency;

(3) relationship with the claimant, including the length of the treating examination, the frequency

of examinations, and the purpose of the treatment relationship; (4) the medical source's

specialization; and (5) other factors, including, but not limited to, "evidence showing a medical

source has familiarity with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

　　　The applicable regulations emphasize that "the most important factors [that the ALJ and

Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and

consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the

supportability factor, the regulations provide that "[t]he more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1),

416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can never climb ropes, ladders, or scaffolds. She can never be exposed to unprotected heights or hazardous machinery. She can occasionally climb stairs and ramps, never crawl, occasionally kneel, occasionally stoop and crouch, frequently reach overhead, frequently finger and handle, occasionally push and pull, and frequently balance. She must have the option to stand or change position from a seated position every hour for up to 3 minutes to stand or change position.

R. 21. In making this determination, the ALJ found, *inter alia*, that Dr. Smith's opinions were unpersuasive, explaining as follows:

> Thus, given such evidence,[9] I also find the limits indicated by a chiropractor, Andrew Smith, in 2018 and 2020 are unpersuasive. The chiropractor similarly

___

[9] In the prior paragraphs, the ALJ considered the treating opinion of Joseph Bellapianta, M.D., but also found it unpersuasive:

indicated limits well below sedentary exertion with sitting less than 2 hours and standing/walking less than 2 hours with at least 4 breaks hourly. He further

I also considered forms medical source, Joseph Bellapianta, M.D., completed in January 2019 and in March 2021. In the first set of forms, the doctor indicated that the claimant was limited to lifting and carrying 5 pounds, standing and/or walking up to 2 hours, sitting less than 6 hours, and pushing and/or pulling less than 2 hours. The doctor noted that the claimant remained unable to return to work due to the need for spinal surgery (Exhibit 12F/3-5). I find this is unpersuasive as the doctor's treatment notes do not support the opined limits. For example, during the initial evaluation in July 2018, the claimant had intact sensation and a normal gait. There was noted tenderness to palpation of the right calcaneus with effusion, but she had near full range of motion. Moreover, she had a normal gait (Exhibit 12F/11). Also, during a November 2018 follow-up, the claimant noted she progressed well with physical therapy. She noted increased right knee pain, but she retained a normal gait (Exhibit 12F/26-27; 13F/7). Moreover, the opined limits are not consistent with other evidence. For example, after lumbar spine surgery in December 2018, in April 2019, the claimant noted that her right knee held her back, but she disclosed that she continued to progress with the low back since surgery and that the right ankle improved as well (Exhibit 23F/7). Also, while there was mention of an antalgic gait with reduced strength ratings ranging from 3- to 4+ out of 5 in the lower extremities, other exams, such as in May 2019, revealed normal strength throughout, including grip, or minimally reduced strength with ratings of 4+ out of 5 as indicated in June 2019 (See e.g., Exhibit 21F/78; 30F/61-63; 31F/3; 32F/2).

Similarly, I find the opined limits in 2021 are unpersuasive. Dr. Bellapianta again indicated restriction well below sedentary exertion with sitting and standing/walking each less than 2 hours with unscheduled breaks every 30 minutes and leg elevation 50% of the time. The doctor also indicated that the claimant needed an assistive device when standing/walking and that she can never twist, stoop, crouch, climb ladders, or climb stairs. The doctor indicated she had significant manipulative limits and that she would miss more than 4 days of work a month (Exhibit 59F). Although the doctor has treated the claimant during the period at issue, the doctor provided sparse explanation to support the significant limits. The doctor cursorily noted pain with stiffness and limited motion (Exhibit 59F/1). Also, the doctor's own treatment notes do not support the limits opined. For example, during a July 2020 follow-up, the claimant had near full range of right knee and right ankle motion with no joint effusion. She had a normal gait (Exhibit 55F/11). Further, the opined limits are not consistent with other evidence. For example, 2020 and 2021 exams indicated intact sensation and strength in the upper and lower extremities or minimally reduced upper and lower extremity strength with 4 to 5 out of 5 ratings, including grip (Exhibit 60F/15, 19, 23, 29, 54). There was mention of difficulty balancing on one leg and heel and toe walking, but the claimant otherwise displayed a grossly stable gait (Exhibit 60F/28-29).

R. 25–26.

indicated that the claimant could rarely twist, stoop, and climb stairs, and never crouch and climb ladders. He indicated that the claimant could handle less than 33% of a workday bilaterally, finger less than 66% of a workday bilaterally, and reach less than 33% of a workday bilaterally. He estimated that the claimant would miss more than 4 days of work a month (Exhibit 7F/2-3; 18E; 53F/52-58). While the chiropractor provided treatment over the longitudinal period at issue, *the degree of restriction noted rests largely, if not entirely, on the claimant's subjective complaints. Apart from noting surgery and treatment, the chiropractor did not provide a clinical basis to support his opinion.* Moreover, as with Dr. Bellapianta's opined limits above, these limits are not consistent with other evidence of record as a whole. As discussed above, the claimant's medical history is notable for surgeries to the right ankle, right knee, and lumbar spine, but from which there has been some reported improvement per the claimant's self-report and signs on exams (See e.g., Exhibit 21F/78; 30F/61-63; 31F/3; 32F/2; 40F/18-19; 55F/11; 60F/28-29). Notably as well, despite complaints of neck pain radiating to the arms, electrodiagnostic testing revealed normal results. There was no evidence of neuropathy, carpal tunnel syndrome, or cervical radiculopathy (Exhibit 40F/18; 46F/3).

R. 26 (emphasis added).

Plaintiff argues, *inter alia*, that the ALJ improperly rejected Dr. Smith's opinions as based "largely, if not entirely" on Plaintiff's subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 26–28; *Plaintiff's Reply Brief*, ECF No. 12, pp. 8–11. Plaintiff first contends that the ALJ's rationale was factually inaccurate because Dr. Smith stated in a 2019 medical report that he began every office visit with a physical examination, providing an objective basis for that physician's opinions:

> All of Melissa's office visits begin with patient interaction, muscle, soft-tissue and joint palpation and analysis, postural and leg checks, review of active global range of motion and active and passive segmental range of motion, appropriate neurological and orthopedic testing, gait analysis and manual axial stretching of the spine to determine current analysis, progress from initial presentation and progress from previous office visit and any need for current care.

*Plaintiff's Memorandum of Law*, ECF No. 6, p. 27 (quoting R. 3214) (internal quotation marks omitted). Plaintiff also points out that Dr. Smith expressly stated in the 2020 opinion that Plaintiff's pain and dysfunction were musculoskeletal in origin and, in both opinions, he identified specific positive clinical findings such as max cervical compression testing, Soto Hall

17

testing, and shoulder compression testing, to support those opinions. *Id.* (citing R. 428, 3146–47, 3152, 3232–38); *see also Plaintiff's Reply Brief*, ECF No. 12, pp. 8–9. Plaintiff argues that this mischaracterization of evidence undermines the ALJ's finding that Dr. Smith relied primarily (or exclusively) on Plaintiff's subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 27–28 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 12, p. 10 (citations omitted). Plaintiff also argues that the ALJ's error in discounting Dr. Smith's opinions is not harmless because his opined limitations, if accepted, would preclude regular and continuing work activity. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 26, 29. For his part, the Acting Commissioner insists that the ALJ properly considered Dr. Smith's opinions, arguing that the ALJ reasonably discounted such opinions as based on Plaintiff's subjective complaints. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10, pp. 24–26.

The Acting Commissioner's arguments are not well taken. As set forth above, Dr. Smith relied on objective findings to support his opinions. For example, in the 2018 opinion, he pointed to contemporaneous examination findings that reflected physical limitations as well as x-ray and MRI evidence. R. 809 (citing maximal cervical compression test, Soto Hall testing, shoulder depressor tests, Minor's Sign, Kemps Test, increased pain with heel walk and toe walk, and decreased cervical and thoracic range of motion and citing to contemporaneous physical findings in his "Passive Physical Range of Motion[,]" R. 815, and "Examination[,]" R. 819, and x-ray and MRI evidence that reflect, *inter alia*, reversal of cervical lordosis and positive lumbar disc bulging "consistent with severe symptomatic presentation"). In the 2020 opinion, Dr. Smith expressly stated that Plaintiff's pain was musculoskeletal in origin, R. 428–29, 3233–34, and he identified positive objective signs of, *inter alia*, reduced range of motion, joint instability, sensory changes, reflex changes, abnormal posture, tenderness, swelling, muscle spasm, muscle

18

weakness, abnormal gait, and positive straight leg raising test, R. 428, 3233 (citing "Enclosed Exam"[10]). Dr. Smith's reference to and reliance on this objective evidence belies the ALJ's reasoning that the chiropractor relied "largely, if not entirely," on subjective complaints and that Dr. Smith "did not provide a clinical basis to support his opinion." R. 26. The ALJ mischaracterized the chiropractor's opinions in this regard. *See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *cf. DeJesus v. Kijakazi*, No. 20-CV-06115-RAL, 2022 WL 1062914, at *10 (E.D. Pa. Apr. 8, 2022) ("By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted."); *Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

Furthermore, the Court cannot conclude that the ALJ's failure to properly consider Dr. Smith's opinions is harmless. This is particularly so because Dr. Smith opined in 2018 that, *inter alia*, Plaintiff could sit less than 6 hours per day and could stand/walk less than 2 hours per day, R. 810, and opined in 2020 that Plaintiff could sit for less than 2 hours and stand/walk for less

---

[10] It is not immediately apparent to the Court where this examination appears in the lengthy administrative record.

than 2 hours in an 8-hour work day, must take unscheduled breaks at least four times per hour, and would be absent from work more than four days per month, R. 430, 432, 3235, 3237; *see also* 20 C.F.R. §§ 404.1567(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), 416.967(a) (same); SSR 83-10, 1983 WL 31251, at *5 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). The chiropractor's opined limitations take on greater significance when one considers that the vocational expert testified that there would be no positions in the national economy for an individual who is off task 15% or more during the workday; who would be absent three or more times per month; who could sit less than two hours during an eight-hour workday or could stand/walk less than two hours in an eight-hour workday; or if such an individual required four unscheduled work breaks each hour. R. 80–81.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[11] Moreover, remand is appropriate even if, upon further examination of Dr. Smith's opinions and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion,

---

[11] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Smith's opinions and the RFC determination, the Court does not consider those claims.

but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Acting Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  March 26, 2025                    *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE